UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AKSHAYRAJ, INC.,           :   Civil Action No. 06-2002 (NLH)
et al.,                    :
                           :
          Plaintiffs,      :
                           :
     v.                    :   **OPINION**
                           :
GETTY PETROLEUM            :
MARKETING, INC. and        :
LUKOIL AMERICAS CORPORATION, :
                           :
          Defendants.      :

**APPEARANCES:**

Lisa J. Rodriguez, Esquire
Trujillo, Rodriguez & Richards, LLP
8 Kings Highway West
Haddonfield, NJ 08033

Michael J. Hynes, Esquire
Stephen Connolly, Esquire
James A. Maro, Esquire
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PA 19083

     *Attorneys for Plaintiffs*

Henry H. Janssen, Esquire
Gregory D. Saputelli, Esquire
Amanda Wyeth Figland, Esquire
Matthew Adam Green, Esquire
Obermayer, Rebmann, Maxwell & Hippel, LLP
20 Brace Road
Suite 300
Cherry Hill, NJ 08034

     *Attorneys for Defendants*

**HILLMAN**, District Judge

     This matter has come before the Court on Defendants' motion
to dismiss Plaintiffs' Complaint.  For the reasons expressed
below, Defendants' motion will be granted in part, denied in

part, and adjourned in part.

I.   **BACKGROUND**

Plaintiffs, franchisee operators of gasoline service stations that have been or will be converted from Mobil stations to Lukoil stations, filed a seven count Complaint against Defendants Getty Petroleum Marketing ("Getty") and Lukoil Americas Corporation ("Lukoil"), claiming that the conversion of their stations from Mobil to Lukoil is a constructive termination of their franchise agreements violative of the Petroleum Marketing Practices Act ("PMPA"), New Jersey Franchise Practices Act ("NJFPA") and Pennsylvania's franchise laws.  Plaintiffs have also asserted claims for breach of contract under New Jersey and Pennsylvania state law, and are also seeking injunctive relief.

On August 11, 2006, this Court heard oral argument on Plaintiffs' motion for preliminary injunction under the Petroleum Marketing Practices Act because two of the Plaintiffs' services stations were scheduled for conversion a few days later.  In an Order issued on the same date, this Court denied Plaintiffs' motion.  Defendants are now moving to dismiss all claims in Plaintiffs' Complaint.  Defendants also move to dismiss all claims against Lukoil for lack of personal jurisdiction.

II.  **DISCUSSION**

Plaintiffs' Complaint tells the story of the creation of the Mobil brand in 1920, the cultivation of its place in the market,

2

the development of its product, services and loyalty of its customers over the years, and then its merger with Exxon, the divestment of its service stations in certain areas, and through various corporate acquisitions, its eventual purchase by Defendant Getty, to which Plaintiffs' franchise agreements were assigned.

Plaintiffs complain that even though Getty retained the right to use the Mobil name through 2010, in May 2005 Getty instituted a "Lukoil renaming program," the effect of which "was to take the Plaintiffs' stations from recognized, identifiable and sought out branded stations to generic stations." Plaintiffs further complain that when Getty began the Lukoil renaming program "suddenly Plaintiffs were being charged the same higher price to obtain gasoline wholesale, but were now generic stations with no customer base and no brand loyalty." As a result, Plaintiffs contend that they had "no choice but to price on the street as if they were still Mobil stations in an attempt to sell gasoline at a loss," but it "resulted in ever shrinking volumes of gasoline sold and added to the alienation of their loyal Mobil brand customers." Based on all of this, Plaintiffs claim that the conversion from Mobil to Lukoil effectively terminated their franchise agreements.

The primary issue that affects the viability of most of Plaintiffs' claims is whether the Lukoil renaming program

amounted to a constructive termination of their franchise
agreements.  This Court has already addressed the issue in the
context of Plaintiffs' motion for preliminary injunction.  In the
August 11, 2006 hearing and the accompanying Order, the Court
held, in relevant part, as follows:

      7.   The Third Circuit has not yet articulated
whether a constructive termination claim is a viable
claim under the PMPA.

      8.   The Seventh Circuit has held that because
PMPA contemplates remedies for an actual ending to a
franchise relationship, a claim for constructive
termination is untenable.  See Jet, Inc. v. Shell Oil
Co., No. 02-2289, 2002 WL 31641627 (N.D. Ill. Nov. 22,
2002), aff'd, 381 F.3d 627 (7th Cir. 2004).

      9.   Courts in the Fifth and Second Circuits have
held that a claim for constructive termination (or
nonrenewal) may be viable if the plaintiffs allege a
breach of the franchise, which consists of three
components: 1) a contract to use the refiner's
trademark, 2) a contract for the supply of motor fuel
to be sold under the trademark, and 3) a lease of the
premises at which the motor fuel is sold.  See Abrams
Shell v. Shell Oil Co., 343 F.3d 482 (5th Cir. 2003);
Yonaty v. Amerada Hess Corporation, No. 304-CV-

4

605FJSDEP, 2005 WL 1460411 (N.D.N.Y. June 20, 2005).

10.  If the Court were to adopt the Seventh Circuit standard, Plaintiffs would not meet the first two elements of the injunction standard for this simple reason.  The Defendant has not actually terminated the franchise relationship.  On the contrary, the Defendants seek to continue to supply Plaintiffs with motor fuel.  Since there has not been any actual termination, Plaintiffs can not demonstrate a required element of their claim for injunctive relief.  Therefore, there is no "sufficiently serious" question going to the merits to make a fair ground for litigation and therefore no injunctive relief under the PMPA.

11.  If the Court were to adopt the Fifth or Second Circuits' approach, Plaintiffs would again not meet the first two elements of the injunction standard because despite Plaintiffs' contention that Lukoil is "unbranded," there is insufficient evidence on the record to conclude that Lukoil is, as Plaintiffs claim, a generic mark.

12.  In fact, the existing record is to the contrary.  Even though Lukoil is a relatively new trademark, it is a trademark in the classical sense: it

is registered with the United States Patent and
Trademark Office, it is advertised, and there is a
concerted and vigorous effort to connect the name or
symbol with a particular product which is sold to
consumers.  Affidavit of Vincent De Laurentis, ¶ 9.

13.  Consequently, no evidence has been presented
at this time to suggest that Lukoil is generic in
nature, and all the record evidence is to the contrary.
So long as Defendants continue to furnish Plaintiffs
with a branded product, there is no constructive breach
of the agreement.  Plaintiffs are not entitled under
the PMPA to the use of a particular mark.  <u>Unified
Dealer Group v. TOSCO Corp.</u>, 16 F. Supp. 2d 1137 (N.D.
Ca. 1998), <u>aff'd</u>, 216 F.3d 1085 (9th Cir. 2000).
Plaintiffs' narrow construction of the statute -
calling any relatively new mark "generic" - would rob
market participants of the adaptability to changing
market conditions and decrease competition.  Both of
these results are contrary to the intent of Congress
when it passed the PMPA and imposed a structure on
contractual relationships ordinarily left to free
markets.  Franchisees were to be protected from more
powerful franchisors but not so much as to disrupt the
ability of those same franchisors to make good faith

business decisions in reaction to ever changing

markets.   Plaintiffs' narrow interpretation of the

meaning of trademark is also contrary to the plain

meaning of the statute.  If Congress intended to define

the franchise as one encompassing only a single mark it

could have easily done so, instead choosing to define

trademark as any mark.  See id.

(Docket Entry No. 20 at 2-5.)

Thus, in the context of a preliminary injunction, the Court

held that: 1) Plaintiffs had not demonstrated that their

franchise was actually terminated, 2) there was insufficient

evidence to conclude that Lukoil is a generic mark, and 3)

because Defendants continued to provide Plaintiffs with a branded

product, there was no termination, constructive or otherwise, of

the franchise agreements.

The Court's holding on the preliminary junction motion

presents a peculiar procedural posture in which to hear

Defendants' motion to dismiss.  Defendants filed their motion to

dismiss, Plaintiffs filed their opposition, and Defendants filed

their reply all prior to the preliminary injunction hearing.  In

deciding Defendants' motion to dismiss Plaintiffs' Complaint for

failure to state a claim upon which relief can be granted

pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all

well-pleaded allegations in the complaint as true, view them in

the light most favorable to the plaintiff, and must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  <u>Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999).  The Court, however, cannot ignore the parties' briefing and representations at oral argument on the preliminary injunction motion, and the Court cannot ignore its findings and legal conclusions.  Thus, the question is whether the Court's Order on the preliminary injunction motion can be considered a "matter of judicial notice," and to what extent can the Court rely on that Order in deciding the instant motion to dismiss.

The Third Circuit has held that although "a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion."  <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).  "'[A] court that examines a transcript of a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment.'"  <u>Id.</u> (citing <u>Southern Cross</u>, 181 F.3d at 427 n.7 (explaining that "[i]t has been suggested that the appropriate analogy is the hearsay rule, which allows an out-of-court statement to be admitted into evidence for purposes other than

establishing the truth of the statement")).  Thus, to the extent
that findings of fact were made at the preliminary injunction
hearing, and the Court wishes to rely on those findings to decide
the motion to dismiss, the motion to dismiss must be converted
into one for summary judgment.

"When a District Court decides to convert a motion to
dismiss into a motion for summary judgment, it must provide the
parties 'reasonable opportunity' to present all material relevant
to a summary judgment motion, and the parties can take advantage
of this opportunity only if they have 'notice of the
conversion.'" In re Rockefeller Center Properties, Inc.
Securitites Litigation, 184 F.3d 280, 287-88 (3d Cir. 1999)
(citing Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989)).
Notice must be "unambiguous and must fairly apprise the parties
that the court intends to convert the motion." Id. (citations
and quotations omitted).  Notice need not be express to meet
these standards, but it is recommended that courts provide
express notice when they intend to convert a motion to dismiss.
Id.

Based on the foregoing, the Court will analyze each count in
Plaintiffs' Complaint to determine whether Defendants' motion can
be decided as a motion to dismiss, or whether it must be
converted.  If it must be converted, the Court will provide the
parties with sufficient time to respond.

## A.    Count I under the PMPA

In Count I of their Complaint, Plaintiffs claim that their
franchise agreements were constructively terminated in violation
of the PMPA when their Mobil stations were converted into Lukoil
stations.  Defendants argue that Plaintiffs' PMPA claim fails
because there is no cause of action under the PMPA for
constructive termination.  Defendants also argue that even if
there were a cause of action for constructive termination, it
would not apply if the franchisee continues to enjoy the core
elements or essential characteristics of the franchise, including
the use of the refiner's trademark.[1]  In response, Plaintiffs
argue that their PMPA count survives Defendants' motion to
dismiss because they pleaded that "Lukoil is not a branded
gasoline supplier and does not sell branded gasoline,"  (Pl.'s
Opp. at 11, citing Amended Compl. ¶ 88), and that allegation is

---

[1]Defendants also interpret Plaintiffs' Complaint as
asserting a claim that the assignment of their franchise
agreements to Getty constituted an unlawful termination of their
agreements.  Defendants argue that this claim must be dismissed
based on the one-year statute of limitations in the PMPA.  In
their opposition brief, Plaintiffs reject Defendants'
interpretation of their Complaint, stating, "Neither of those
paragraphs [referenced by Defendants] remotely allege that COP's
assignment of Plaintiffs' franchise agreements was a termination
of Plaintiffs' franchise agreements. . . . Defendants' position
that Plaintiffs' PMPA claims were in any way related to the May
2004 assignment of the franchise agreements from COP to Getty is
completely unfounded, misrepresents Plaintiffs' allegations, and
is simply wrong."  (Pl.'s Opp. at 8.)  Because Plaintiffs
categorically deny that they have asserted such a claim, the
Court will not address Defendants' argument.

sufficient to establish, for the purposes of a Rule 12(b)(6) motion, that one of the core elements of their franchise was destroyed.  Additionally, Plaintiffs attempt to distinguish the caselaw cited by Defendants by arguing that the cases are inapplicable because they were decided on summary judgment after discovery, and not at the motion to dismiss stage as here.

As discussed above, the Court addressed this issue at the preliminary injunction hearing and determined sufficient evidence was lacking to conclude that Lukoil is a generic mark, and because Defendants continued to provide Plaintiffs with a branded product, there was no termination, constructive or otherwise, of the franchise agreements.  That decision was based on the parties' briefing, affidavits, and oral argument on the preliminary injunction motion.  The same briefing, affidavits, and arguments were not presented by the parties on this motion to dismiss, and if the preliminary injunction proceedings are to be considered now, the motion to dismiss must be converted to one for summary judgment.

Even though in considering a motion to dismiss the Court must accept all well-pleaded allegations in Plaintiffs' Complaint as true and view them in the light most favorable to Plaintiffs, the Court need not credit either "bald assertions" or "legal conclusions."  See General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 333 (3d Cir. 2001) (citing 2 James Wm. Moore,

11

Moore's Federal Practice § 12.34[1][b], at 12-61 to 12-63 (3d ed. 2001) ("Liberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded the pleader. . . . [C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.")).

Here, Plaintiffs' Complaint states that "Lukoil is not a branded gasoline supplier and does not sell branded gasoline," (Compl. ¶ 88) and that "Lukoil is not a branded gasoline, it is generic, comparable to Delta and Riggins, not a Mobil, Sunoco or Texaco," (id. ¶ 128).  The Complaint does not provide any explanation, other than Plaintiffs' subjective characterization, for why Lukoil is not a brand but Mobil is, or why Lukoil is a generic like Delta but Mobil is not.  The claim that Lukoil is generic may be an example of a bald assertion that the Third Circuit warned against, requiring Plaintiffs' PMPA claim to be dismissed.  However, because this issue affects other claims in Plaintiffs' Complaint, the Court will convert Defendants' motion on this count into one for summary judgment in order to determine whether there is any substance to Plaintiffs' claim.

Upon conversion, Defendants have the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Their burden has already been met based on the findings of law and fact from the preliminary injunction hearing, which may now be considered due to the conversion of the motion.  As the facts existed at the time of the preliminary injunction hearing, there was insufficient evidence to show that Lukoil is not a brand.

Because Defendants have met their burden, the burden shifts to Plaintiffs.  Id.  In order to defeat summary judgment, Plaintiffs must now must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial on whether Lukoil is a brand or generic, which is dispositive of whether Defendants constructively terminated the franchise agreements.  Due to the conversion of the motions, however, Plaintiffs must be afforded notice of the conversion, and be given the opportunity to meet their burden to defeat summary judgment.  Consequently, Defendants' motion to dismiss will be adjourned to provide notice to Plaintiffs and time to compile and present their evidence.[2]

---

[2]It must be noted that Plaintiffs did not provide such proof at the preliminary injunction motion, and the Court admonishes that Plaintiffs must do more than simply rest upon mere allegations, general denials, or vague statements to meet their burden.  See Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

13

## B.   Count II - Breach of Contract for Failure to Supply Mobil Products

In Count II of their Complaint, Plaintiffs claim that their franchise agreements contain a statement that Mobil granted TOSCO the right, which was eventually assigned to Getty, to use the Mobil trademark for ten years, and "nowhere in their Franchise Agreements does it say that the franchise dealer will lose its right to use the Mobil name and System prior to the expiration" of the ten years.  (Compl. ¶¶ 121-122.)  Plaintiffs claim that because Defendants did not supply Plaintiffs with Mobil products, they breached the contract.  (Id. ¶ 123.)

In their motion to dismiss, Defendants argue that because Plaintiffs did not comply with the UCC by not rejecting non-conforming goods in a reasonable time, Plaintiffs' claim fails. Defendants do not refer, however, to the franchise agreements, which the Court may consider even if they are not attached to the Complaint because they form the basis of Plaintiffs' claims.[3]

---

[3]In deciding a motion to dismiss, a court is permitted to consider documents that form the basis of a claim, even if the documents are not attached to the Complaint.  "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document.  Further, considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered." Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (citations omitted).  Even though Plaintiffs did not attach their franchise agreements to their Complaint, it cannot be disputed that the agreements provide the basis for their claims.  See id. (stating

The agreements provide,

> 1.2 <u>Rebranding</u>.  GETTY reserves the right, at its sole
> discretion, to change the brand and Proprietary Marks
> under which Products, including Motor Fuel, are
> authorized to be sold at the Marketing Premises,
> without affecting other rights or obligations of GETTY
> and Franchise Dealer under this Agreement, upon ninety
> (90) days written notice to Franchise Dealer.[4]

Plaintiffs' second count appears to be an absolute
contradiction to the language of their franchise agreements.
Plaintiffs claim that "nowhere" in their agreements do they
relinquish their right to use the Mobil brand or sell Mobil
products, but provision 1.2 explicitly allows for that
relinquishment.  Plaintiffs do not contend that they were not
given proper notice in violation of the provision, or that
Plaintiffs should have been permitted to sell Lukoil fuel under
the Mobil brand name.  The Court cannot accept Plaintiffs'
allegations of a breach of contract when the contract plainly
permits Defendants' conduct.  Consequently, Plaintiffs' claim for
breach of contract for Defendants' failure to supply them Mobil
products fails to state a claim upon which relief may be granted,
and must be dismissed.

---

that a document forms the basis of a claim if it is "integral to
or explicitly relied upon in the complaint.")

[4]The language cited here is contained in Plaintiff Chhabra's
franchise agreement, which was submitted to the Court in regard
to the preliminary injunction motion.  For the purposes of this
motion, the Court will assume that the language is substantively
similar in all Plaintiffs' franchise agreements.

### C.   Count III - Breach of Contract for Failure to Price in Good Faith

Plaintiffs claim in their third count that when they sold Mobil oil under the Mobil name, they were able to charge a few cents more per gallon.  When their stations were renamed to Lukoil, however, they still charged a few cents more per gallon as they had under the Mobil name, but because Lukoil is generic, and generic gasolines compete on price, "Defendants made it impossible for Plaintiffs to compete on price and accordingly, made it impossible for them to compete."  (Compl. ¶ 125-29.) Plaintiffs claim that Defendants' actions were not made in good faith or in a commercially reasonable fashion as required by the UCC.

Because Defendants' motion to dismiss will be converted into a one for summary judgment on Plaintiffs' PMPA claim, this claim will be converted as well because it also depends on whether Lukoil is a "brand" or is "generic."  Thus, the resolution of whether this claim can survive summary judgment will be resolved following the expiration of Plaintiffs' notice period.

### D.   Count IV - Breach of Contract for Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs also claim that Defendants' actions breached the implied covenant of good faith and fair dealing by implementing the renaming program, "pricing under the open pricing terms

16

contained in the Franchise Agreements, and the providing of services to the Plaintiffs." (Compl. ¶ 140.)   Plaintiffs further claim that Defendants' actions breached the implied covenant of good faith and fair dealing "by setting prices for gasoline arbitrarily, unreasonably, and capriciously and with the objective of depriving the Plaintiffs of their reasonable contractual expectations by a) artificially inflating the price charged by the Plaintiffs for gasoline; b) charging unreasonably high prices in excess of the prices charged by other suppliers in the market; and c) charging the Plaintiffs discriminatory prices that wrongfully favor company operated gasoline stations to the Plaintiffs' detriment." (Id. ¶ 141.)

In deciding Defendants' motion to dismiss, all well-pleaded allegations in Plaintiffs' Complaint must be taken as true. First, with respect to Plaintiffs' claim that implementing the renaming program was a breach of the implied covenant of good faith and fair dealing, that claim fails because the franchise agreement explicitly allows for rebranding, as discussed above regarding Count II.  Second, Plaintiffs' claim that Defendants did not act in good faith in providing services to Plaintiffs fails because it is too vague and does not meet the notice pleading standard required by Fed. R. Civ. P. 8.

Plaintiffs' other claims relate to the pricing of the gasoline.  Defendants argue that these claims must be dismissed

because Plaintiffs have failed to allege that Defendants had a specific bad motive or intention to injure Plaintiffs.

The New Jersey Supreme Court has articulated a test for determining whether the implied covenant of good faith and fair dealing has been breached:

> [A] party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract. Such risks clearly would be beyond the expectations of the parties at the formation of a contract when parties reasonably intend their business relationship to be mutually beneficial. They do not reasonably intend that one party would use the powers bestowed on it to destroy unilaterally the other's expectations without legitimate purpose.

Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1130 (N.J. 2001).

The Court further explained that a showing of bad motive is essential:

> [T]he test must recognize the mutuality of expectation and enforce a party's contractual right to exercise discretion in setting prices based on its own reasonable beliefs concerning business strategy. In that setting, an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive. . . . Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance.  Bad motive or intention is essential, for, as stated by the United States Court of Appeals for the Seventh Circuit, "[c]ontract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper."

<u>Id.</u> at 1130-31 (citations omitted).

The fact that Plaintiffs have not explicitly used the words "specific bad motive" or "intention to injure" is not fatal to their claim at this stage.  Plaintiffs have specifically alleged that Defendants exercised their discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing Plaintiffs from receiving their reasonably expected fruits under the contract, which is the test for a breach of the implied covenant of good faith and fair dealing.  The terms "arbitrarily, unreasonably, or capriciously" connotate bad faith, and the phrase "objective of preventing" connotates intent. Further, the allegation that Defendants breached the covenant of good faith implicitly means that Defendants acted in bad faith.

Contrary to Defendants' contention, the caselaw requires that Plaintiffs make a showing of bad motive, but it does not require that a claim must be summarily dismissed for its failure to include the words "bad motive."  Consequently, for the purposes of this motion to dismiss, Plaintiffs have stated a claim for a breach of the implied covenant of good faith and fair dealing with regard to the pricing of gasoline.[5]

---

[5] Plaintiffs must be given a full opportunity to show bad motive on Defendants' part before any motion for summary judgment is decided.  <u>See</u> <u>Wilson v. Amerada Hess Corp.</u>, 773 A.2d 1121, 1131 (N.J. 2001).

**E.   Count V - Violation of the New Jersey Franchise
       Practices Act
       Count VI - Breach of Franchise Agreement under
       Pennsylvania Law**

The New Jersey Plaintiffs claim that Defendants violated the
New Jersey Franchise Practices Act ("NJFPA") by terminating their
franchises without good cause.  The Pennsylvania Plaintiffs claim
that Defendants' constructive termination of their franchise
agreements violated Pennsylvania state law because the
termination was not in good faith, was not commercially
reasonable, and done arbitrarily.  Defendants claim that these
claims must be dismissed because they are preempted by the PMPA.
Plaintiffs argue that the PMPA does not preempt constructive
termination claims.

Because these claims directly relate to the determination of
whether Defendants constructively terminated their franchise
agreements, which depends on the resolution of whether Lukoil is
a "brand" or is "generic," the motion on these two claims will be
converted to a motion for summary judgment, and the issue will be
resolved following the expiration of Plaintiffs' notice period.

**G.   Count VII - Injunctive Relief pursuant to PMPA**

Plaintiffs' request for injunctive relief was already heard
and decided by this Court on August 11, 2006.

20

### H.   Personal Jurisdiction of Lukoil

Defendant Lukoil argues that this Court does not have personal jurisdiction over it.  This issue will be resolved when the Court rules on the converted summary judgment motion.

### III. CONCLUSION

For the reasons expressed above, Defendants' motion to dismiss will be granted as to Count II, and denied as to Count IV.  Defendants' motion to dismiss will be converted into a motion for summary judgment as to Counts I, III, V and VI. Resolution of Defendants' motion on those four counts will be adjourned for twenty days in order to provide Plaintiffs with proper notice of the conversion and the opportunity to present their proofs to support their opposition to Defendants' motion. Based on the findings in the preliminary injunction hearing and the present procedural posture of the case, the Court does not see any reason why Plaintiffs should not have enough time to submit their proofs within the time frame provided.  An appropriate Order will be entered.


Date: March 6, 2007                  s/ Noel L. Hillman

At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.


21