UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AKSHAYRAJ, INC., | : | Civil Action No. 06-2002 (NLH) |
| et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GETTY PETROLEUM | : | |
| MARKETING, INC. and | : | |
| LUKOIL AMERICAS CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Lisa J. Rodriguez, Esquire
Trujillo, Rodriguez & Richards, LLP
8 Kings Highway West
Haddonfield, NJ 08033

Michael J. Hynes, Esquire
Stephen Connolly, Esquire
James A. Maro, Esquire
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PA 19083

    *Attorneys for Plaintiffs*

Henry H. Janssen, Esquire
Gregory D. Saputelli, Esquire
Amanda Wyeth Figland, Esquire
Matthew Adam Green, Esquire
Obermayer, Rebmann, Maxwell & Hippel, LLP
20 Brace Road
Suite 300
Cherry Hill, NJ 08034

    *Attorneys for Defendants*

**HILLMAN**, District Judge

I.    **BACKGROUND**

        Plaintiffs, franchisee operators of gasoline service

stations that have been or will be converted from Mobil stations

to Lukoil stations, filed a seven count Complaint against Defendants Getty Petroleum Marketing ("Getty") and Lukoil Americas Corporation ("Lukoil"), claiming that the conversion of their stations from Mobil to Lukoil is a constructive termination of their franchise agreements violative of the Petroleum Marketing Practices Act ("PMPA"), New Jersey Franchise Practices Act ("NJFPA") and Pennsylvania's franchise laws, as well a breach of contract under New Jersey and Pennsylvania state law.

To date, this case has involved a preliminary injunction hearing, an Opinion and Order denying Plaintiffs' request for injunction, and an Opinion and Order on Defendants' motion to dismiss all of Plaintiffs' claims, which the Court granted in part, denied in part, and converted in part to a motion for summary judgment.  When Defendants' motion was converted into one for summary judgment, the Court adjourned the resolution of the motion for twenty days in order to provide Plaintiffs with proper notice of the conversion and the opportunity to present their proofs to support their opposition to Defendants' motion. Plaintiffs provided their proofs as directed by the Court, but in the weeks following their submission and Defendants' response, Plaintiffs filed a motion to consolidate their case with another similar case pending before this Court, and they also filed a motion for leave to supplement to their proofs.  Defendants have opposed both motions.

Three issues are presently before the Court for resolution: (1) Defendants' converted motion for summary judgment, which also concerns Plaintiffs' request to supplement their proofs, (2) Defendants' motion to dismiss Lukoil Americas Corporation for lack of personal jurisdiction, which the Court had previously adjourned pending Plaintiffs' submission of additional proofs, and (3) Plaintiffs' motion for consolidation.

## II.   DISCUSSION

### A.   Defendants' Converted Motion for Summary Judgment

Defendants' converted motion concerns Plaintiffs' Counts I, III, V and VI, which involve Plaintiffs' claims that Defendants constructively terminated their franchise agreements.  The dispositive issue in determining whether Defendants constructively terminated Plaintiffs' agreements is whether, as Plaintiffs have crafted the issue, Lukoil is a brand or a generic.

Due to the procedural posture of the case, that issue had already been decided for the purposes of the preliminary injunction.  The Court found that sufficient evidence was lacking to conclude that Lukoil is a generic mark.  As explained in the Court's March 6, 2007 Opinion, however, that decision could only be considered in resolving Defendants' motion to dismiss if Defendants' motion was converted into one for summary judgment. Consequently, the Court converted Defendants motion, and held

3

that Defendants met their burden on summary judgment to show the absence of a genuine issue of fact with regard to whether Lukoil is a generic mark.  Plaintiffs were then afforded the opportunity to submit their proof in order to defeat summary judgment.  It is now Plaintiffs' burden to present specific facts showing that there is a genuine issue for trial on whether Lukoil is a brand or generic.

Plaintiffs' proof consists of an affidavit and expert report from Jeffrey Bernard.  (Bernard Aff., Pl.'s Ex. A.)  Bernard is the founder of J. Bernard Associates, LLC, a petroleum marketing consulting firm, and he advises petroleum marketing clients on business, pricing and brand strategies, service culture, organizational improvement, convenience store retailing, business valuation, property acquisition, and lease and contract negotiations.  Based on his experience, which includes nearly 30 years in the marketing and customer support areas of Mobil Oil Company, Bernard provides his opinions on three questions: (1) What constitutes branded gasoline versus unbranded (i.e., generic) gasoline in the petroleum marketing industry?; (2) Is Lukoil a customer recognized branded gasoline versus an unbranded gasoline?; and (3) Did the change from the Mobil brand to Lukoil name have an impact on the plaintiffs?

With regard to the first question, Bernard explains that in the petroleum marketing business, the industry recognizes a

number of brand categories--major brands, regional brands, sub-majors, independent brands, and unbranded.  Bernard explains that that major brands are historically identified by customers in a group of high quality, trusted brands, such as Exxon, Mobil, Shell, Chevron, and BP.  Major brands typically receive a brand premium from the consumer that varies from 1 to 5 cents per gallon.  Regional brands, such as Sunoco and Valero, also qualify as major brands in the minds of the geographical areas in which they market.

According to Bernard, consumers of sub-majors, such as CITGO and Gulf, are willing to pay a small premium for these brands versus generic gasoline, although the gasoline at these sub-majors are typically priced slightly below the recognized major brands.  Independent brands, such as Speedway and Wawa, are typically priced at the low end of the market, and have little differentiation from unbranded gasoline, but the consumers tend to associate with the gasoline the favorable characteristics of the store which sells the gasoline.

Bernard explains that all other gasoline is considered unbranded, such as Delta, Riggins, or Xtra.  Even though these petroleum products are commonly sold with a trademark name, they do not qualify as a brand in the petroleum marketing industry because they are sold at the lowest retail price, as the consumer perceives no brand value with the unbranded gasoline products.

5

Based on these categories of branded and unbranded gasoline, Bernard concludes that Lukoil is not a branded gasoline, primarily because it is not a brand with the loyal customer base associated with a recognized brand. Bernard explains that it "will take years to develop a loyal customer base that differentiates them from an unbranded supplier. [Lukoil] must consistently invest over the next five to ten years in consumer research and other marketing initiatives that the gasoline customer equates to a branded oil company before they might achieve a recognized gasoline brand status." (Bernard Aff. at 16.)

Bernard also considers Lukoil to be unbranded because dealers who converted from the Mobil brand to the Lukoil name lost both volume and profit as a result of the conversion. Bernard explains that after the conversion, Lukoil maintained a price posture that was similar to Mobil's major brand price position, but because the consumer did not recognize the Lukoil name and could no longer use the proprietary credit cards or Speedpass to purchase fuel, they were not willing to pay that premium. According to Bernard, because consumers would not pay that premium indicates that Lukoil is not a brand.

Based on Bernard's affidavit, Plaintiffs contend that Defendants' motion for summary judgment must be denied because genuine factual dispute exists as to whether Lukoil is a brand or

6

generic.  The problem with Plaintiffs' reliance on Bernard's affidavit, however, is that the use of the terms "brand" and "generic," and the differentiation of branded gasoline products based on consumer perspective, has taken the issue too far afield.

The primary issue in the case is whether Defendants constructively terminated the franchise agreements between Defendants and Plaintiffs, because whether Defendants constructively terminated the franchise agreements by rebranding their Mobil service stations to Lukoil is the basis for their PMPA and state law claims.  As explained in the Court's previous Opinions, even though the Third Circuit has not yet articulated whether a constructive termination claim is a viable claim under the PMPA, the Seventh, Fifth and Second Circuits have addressed the issue.  The Seventh Circuit has held that because PMPA contemplates remedies for an actual ending to a franchise relationship, a claim for constructive termination is untenable.  See Jet, Inc. v. Shell Oil Co., No. 02-2289, 2002 WL 31641627 (N.D. Ill. Nov. 22, 2002), aff'd, 381 F.3d 627 (7th Cir. 2004).

Courts in the Fifth and Second Circuits have held that a claim for constructive termination (or nonrenewal) may be viable if the plaintiffs allege a breach of the franchise, which consists of three components: 1) a contract to use the refiner's trademark, 2) a contract for the supply of motor fuel to be sold

under the trademark, and 3) a lease of the premises at which the motor fuel is sold.  See Abrams Shell v. Shell Oil Co., 343 F.3d 482 (5th Cir. 2003); Yonaty v. Amerada Hess Corporation, No. 304-CV-605FJSDEP, 2005 WL 1460411 (N.D.N.Y. June 20, 2005); see also 15 U.S.C. § 2805(1)(A) (the elements of a PMPA franchise are (1) a contract to use a trademark owned or controlled by the refiner, (2) a contract for the supply of motor fuel, and (3) lease of service station premises).

Thus, if this Court were to hold that a claim for constructive termination is viable, Plaintiffs must show that Defendants have failed to provide them with a trademark under which to sell their motor fuel.  At the preliminary injunction stage, the Court held that there was insufficient evidence on the record to conclude that Lukoil is, as Plaintiffs claim, a generic mark.  The Court explained,

> Even though Lukoil is a relatively new trademark, it is a trademark in the classical sense: it is registered with the United States Patent and Trademark Office, it is advertised, and there is a concerted and vigorous effort to connect the name or symbol with a particular product which is sold to consumers. . . . . So long as Defendants continue to furnish Plaintiffs with a branded product, there is no constructive breach of the agreement.

> Plaintiffs are not entitled under the PMPA to the use of a particular mark.  Plaintiffs' narrow construction of the statute - calling any relatively new mark "generic" - would rob market participants of the adaptability to changing market conditions and decrease competition. Both of these results are contrary to the intent of Congress when it passed the PMPA and imposed a structure on contractual

8

relationships ordinarily left to free markets.
Franchisees were to be protected from more powerful
franchisors but not so much as to disrupt the ability
of those same franchisors to make good faith business
decisions in reaction to ever changing markets.
Plaintiffs' narrow interpretation of the meaning of
trademark is also contrary to the plain meaning of the
statute.  If Congress intended to define the franchise
as one encompassing only a single mark it could have
easily done so, instead choosing to define trademark as
any mark.

(Docket Entry No. 20 at 2-5.)

In response to this analysis, Bernard explains, "It is my
opinion that having a registered trademark or being in the
infancy stages of marketing a brand does not make LUKOIL a
branded gasoline product.  Any supplier can, and almost all do,
obtain a trademark and advertise the product.  The issue is
whether the customers recognize the LUKOIL name as a branded
gasoline.  It is my opinion based on the time the LUKOIL name has
been exposed to the gasoline buying public and the lack of a
truly proprietary credit card base make LUKOIL an unbranded or
generic gasoline versus a branded product."  (Bernard Aff. at 9.)

Bernard's opinion is not sufficient to alter the Court's
previous analysis.  Even though the parties, and the Court, have
used the term "brand" as a synonym for "trademark," and have used
the term "generic" to represent the selling of "unbranded"
gasoline, the plain language of the PMPA does not contemplate the
synonym "brand" to be as broad as Bernard has defined it.

Contrary to Bernard's position, as previously explained by

the Court, the issue is exactly what Bernard says it is not.  The
issue for a constructive termination claim under the PMPA is
whether Defendants have provided Plaintiffs with a trademarked
product--it is not about the strength of a particular brand in
the marketplace.  Indeed, if Bernard's position were to be
followed, it is unclear what level of "brand" would not
constitute a constructive termination--would an independent brand
such as Wawa be sufficient, or would only a major brand suffice?[1]

Bernard's affidavit basically posits that if a consumer will
not pay a premium of 1 to 5 cents per gallon for gasoline, then
the gasoline is not a brand.  Bernard's affidavit also
contemplates that unless a brand has been marketed to the public
for five to ten years, it is not a brand.  Perhaps in the
petroleum marketing business these observations may be true, but
nothing in the PMPA supports the claim that Defendants
constructively terminated the franchise agreements by changing

---

[1]The caselaw cited by Plaintiffs is inopposite: <u>Melso v.
Texaco, Inc.</u>, 532 F. Supp. 1280 (E.D. Pa. 1982) (discussing the
difference between branded and unbranded gasoline in the context
of an injunction filed by independent retailers of Texaco
gasoline to prevent Texaco from assessing the retailers a three
percent credit card invoice processing fee through Texaco's
revision of its credit card program); <u>Robertson Oil Co., Inc. v.
Phillips Petroleum Co.</u>, 871 F.2d 1368 (8th Cir. 1989) (law suit
concerning an "unbranded" Spe-Dee Mart request to its gasoline
supplier, Robertson Oil, to convert to "branded" Phillips
stores); <u>Chawla v. Shell Oil Co.</u>, 75 F. Supp. 2d 626 (S.D. Tex.
1999) (recognizing in an antitrust action that the case only
dealt with branded gasoline because there are differences in
product markets between branded and unbranded gasoline for
antitrust purposes).

the trademark under which they sold their gasoline.  To hold
otherwise would require this Court to rewrite the PMPA.

In response to Defendants' reply to the Bernard affidavit
and Plaintiffs' accompanying brief, which makes many of the same
observations set forth by the Court, Plaintiffs have sought leave
to provide a supplemental affidavit of Bernard.  Defendants have
opposed the submission of this supplemental affidavit for many
reasons--e.g., it is a sham, it consists of inadmissible
evidence, and violates the Federal Rules of Civil Procedure.
Even if, however, the Court permitted the filing of the
affidavit, it still would not be sufficient to demonstrate that
Defendants constructively terminated Plaintiffs' franchise
agreements.

The supplemental affidavit makes two additional points.
First, Bernard explains that Lukoil is not part of the Brandmark
Customer Loyalty Awards because the branded retail marketers
themselves do not view Lukoil as one of their competitors.
Bernard makes this point in response to Defendants' notation that
only seven gasoline brands are subject to the polling.  Second,
attached to the affidavit are bills of lading generated by Lukoil
that identify their product as "generic," which Bernard explains
amounts to a formal admission that Lukoil sells generic gasoline.

With regard to the Brandmark Customer Loyalty Awards, even
accepting as true that the seven brands that took part in the

11

survey did not consider Lukoil to be a competitor, it does not
mean that is not a "brand" or it was not marketing motor fuel
under a trademark.  As stated by Bernard, the Brandmark Cusomer
Loyalty Awards "provide[] companies with 'the values that drive
consumer loyalty' in their product category including an
'Analysis of your brand's strengths and weaknesses vs. the
competition.'" (Supplemental Bernard Report at 2.)  These surveys
of customers' perception of the strength of a brand is immaterial
in a PMPA constructive termination claim.

    With regard to the bills of lading, disregarding any
evidentiary issues, they also do not have any relevance to
Plaintiffs' PMPA claim.  Bernard explains that a bill of lading
is a document that is created when gasoline is loaded into a
tanker truck at a fuel terminal, and it identifies the quantity
and type of fuel loaded on the truck, the date and time of the
loading, the point of origin, and the point of delivery.
(Supplemental Bernard Report at 3.)  Bernard posits that after
the conversion of the Mobil stations to Lukoil, the bills of
lading "clearly identify that the product loaded on the truck was
'Generic" or 'GenAdd' (generic additive).  There is no indication
that the product was LUKOIL gasoline or anything other than
generic with any unique qualities." (Id.)

    As stated above, a PMPA franchise entails 1) a contract to
use the refiner's trademark, 2) a contract for the supply of

12

motor fuel to be sold under the trademark, and 3) a lease of the premises at which the motor fuel is sold.  Even if the bills of lading provide evidence that Lukoil sells generic gasoline, as Plaintiffs argue, it does not prove that Lukoil failed to provide the franchisees with a trademark under which to sell the gasoline.  It is immaterial what Defendants call their fuel-- whether its labeled "generic," "genadd," "Lukoil," or even something as descriptive as "liquid gold" or as simple "motor fuel"--because neither the PMPA, nor the franchise agreements, require Defendants to provide a specific type of motor fuel to Plaintiffs.  Instead, as long as Defendants supply Plaintiffs with motor fuel and a trademark under which to sell that fuel, then there has been no termination of the franchise agreement.[2]

In addition to their Bernard affidavits, Plaintiffs also argue that summary judgment is premature at this time.  They propose further discovery that they wish to conduct in order to "bolster their contention that Lukoil is not a branded gasoline product." (Pl.'s Br. at 13-14.)  Even if the Court were to grant Plaintiffs time for their requested discovery, bolstering their contention that Lukoil is not a branded gasoline will not prove that the elements of a PMPA franchise have been breached.

---

[2]Defendants also point out that liquid products cannot be stamped with a trade name.  Because consumers cannot handle motor fuel--it cannot be sold in Lukoil bottles like cola can in Coke bottles--the motor fuel marks are affixed on the station and on the retail delivery pump dispensers.

A final issue is the effect of the Court's above findings above on Plaintiffs' specific claims.  In the Court's March 6, 2007 Opinion, Defendants' motion to dismiss was converted as to Counts I, III, V and VI.  In Count I of their Complaint, Plaintiffs claim that their franchise agreements were constructively terminated in violation of the PMPA when their Mobil stations were converted into Lukoil stations.  Because the Court has found that Plaintiffs have not met their burden of proving that sufficient facts exist as to whether Defendants breached the elements of their PMPA franchise agreements, summary judgment must be entered in favor of Defendants on Count I.

In Count V, the New Jersey Plaintiffs claim that Defendants violated the New Jersey Franchise Practices Act ("NJFPA") by terminating their franchises without good cause, and in Count VI the Pennsylvania Plaintiffs claim that Defendants' constructive termination of their franchise agreements violated Pennsylvania state law because the termination was not in good faith, was not commercially reasonable, and done arbitrarily.

There are two reasons why these claims fail.  First, the Court has held that the franchise agreements have not been constructively terminated by Defendants.  Second, and regardless of the first reason, these state law claims are preempted by the PMPA.  See O'Shea v. Amooco Oil Co., 886 F.2d 584, 592 (3d Cir. 1989) (holding that the PMPA preempts state laws that regulate

the "grounds for, procedures for, and notification requirements
with respect to termination," to the extent that such laws are
not the same as the PMPA); Kehm Oil Co. v. Texaco, Inc., 2007 WL
626140, *4 (W.D. Pa. Feb. 26, 2007) (citing Siecko v. Amerada
Hess Co., 569 F.Supp. 768, 772-73 (E.D. Pa. 1983)); Glenside West
Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1116 (D.N.J.
1991).

    The final claim that is subject to Defendants' converted
motion is Count III, which is for breach of contract for failure
to price in good faith.  Plaintiffs claim that when they sold
Mobil oil under the Mobil name, they were able to charge a few
cents more per gallon.  When their stations were renamed to
Lukoil, however, they still charged a few cents more per gallon
as they had under the Mobil name, but because Lukoil is generic,
and generic gasolines compete on price, "Defendants made it
impossible for Plaintiffs to compete on price and accordingly,
made it impossible for them to compete."  (Compl. ¶ 125-29.)
Plaintiffs claim that Defendants' actions were not made in good
faith or in a commercially reasonable fashion as required by the
UCC.

    The Court converted Defendants' motion on this claim because
it also depends on whether Lukoil is a "brand" or is "generic."
The essence of this breach of contract claim is that because
Lukoil is a generic gasoline, like Delta or Riggings, which have

no brand value according to Bernard, it should be priced as a
generic, and not as a major brand, such as Mobil.  Plaintiffs
claim that because Defendants priced Lukoil as a major brand even
though it is a generic, Defendants breached their franchise
agreements by not pricing the gasoline according to its non-brand
status.

The franchise agreements permit rebranding: "GETTY reserves
the right, at its sole discretion, to change the brand and
Proprietary Marks under which Products, including Motor Fuel, are
authorized to be sold at the Marketing Premises, without
affecting other rights or obligations of GETTY and Franchise
Dealer under this Agreement, upon ninety (90) days written notice
to Franchise Dealer." (See March 6, 2007 Opinion at 15.)
Defendants provided Plaintiffs with a new brand and proprietary
mark under which to sell the gasoline Defendants provided them.
Simply because Plaintiffs view Lukoil to be generic does not mean
that Defendants' rebranding to a "generic" mark, and then not
adjusting the pricing according to that generic status,
constitutes a breach of the franchise agreements.[3]

---

[3]Defendants point out that one of Bernard's opinions is that
major brands have prices higher than what he terms generic
gasoline, and that Plaintiffs admit that Lukoil is pricing its
gasoline at the same level as the major brands.  Defendants
contend that if both propositions are true, then Lukoil is a
brand under Bernard's theory.

Additionally, to the extent that Plaintiffs contend that
Defendants violated the duty of good faith in pricing the

Consequently, even though this claim is classified as a different claim than the constructive termination claims, it hinges on the same contention--that Lukoil is a generic--as the termination claims.  As such, Defendants are entitled to summary judgment on this claim as well.

**B.   Defendants' Motion to Dismiss Lukoil Americas Corporation for Lack of Personal Jurisdiction**

Defendants have moved to dismiss Lukoil for lack of personal jurisdiction.  Defendants argue that this Court lacks specific and general jurisdiction over Lukoil because (1) Lukoil was not a party to the franchise agreements, and because (2) Plaintiffs have not made any averments in their Complaint regarding Lukoil's contacts with New Jersey and (2) do not allege that Getty is an alter ego of Lukoil.  Plaintiffs counter that they have properly alleged that Lukoil has sufficient contacts with New Jersey specifically with regard to the franchise agreements, and with New Jersey in general.[4]

_____

gasoline, regardless of the generic/brand status of Lukoil, Plaintiffs have already asserted such a claim: Count IV, breach of contract for breach of the implied covenant of good faith and fair dealing, which the Court permitted to proceed past Defendants' motion to dismiss in the March 6, 2007 Opinion. Defendants' motion on this claim was not converted into one for summary judgment, and, following this Opinion, is the only viable claim remaining in the case.

[4]Plaintiffs also argue that LAC has waived its objection to personal jurisdiction through prior contact with the Court. Plaintiffs argue that because Defendants filed their opposition to Plaintiffs' motion for a preliminary injunction without

Jurisdiction under a state's long arm statute is measured by the defendant's specific contacts with the state.  A court can exercise jurisdiction over an out-of-state defendant only if it purposefully avails itself of the privilege of conducting activities within the forum State.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985).  To prove that a defendant has purposefully availed itself of that state, a plaintiff may rely upon a defendant's specific contacts with the forum state, and specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum.  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984). In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation."  <u>Keeton v. Hustler</u>, 465 U.S. 770 (1984).

If a defendant does not have specific contacts with the

---

raising the personal jurisdiction issue, Defendants waived their objection to personal jurisdiction.

 Plaintiffs' argument is unavailing. The defense of lack of personal jurisdiction is waived if it is omitted from a Rule 12(b)(2) motion, or if it is not made by a motion or not included in a responsive pleading.  Fed. R. Civ. P. 12(h).  Defendants filed their opposition to Plaintiffs' motion for preliminary injunction on June 2, 2006, and then filed their motion to dismiss pursuant to Rule 12(b), which included their opposition to personal jurisdiction, on June 19, 2006.  Defendants did not appear before this Court on Plaintiffs' preliminary injunction motion until August 11, 2006.  Consequently, Defendants have not waived their objection to personal jurisdiction.

state, a court may exercise general jurisdiction if the defendant has maintained "continuous and systematic contacts" with the forum state.  <u>Helicopteros</u>, 466 U.S. at 416.  To establish general jurisdiction the plaintiff must show significantly more than mere minimum contacts with the forum state.  <u>Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 437 (3d Cir. 1987).

Once minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  <u>Burger King Corporation</u>, 471 U.S. at 476 (citations omitted).  For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980).

If personal jurisdiction in contested, the plaintiff bears the burden to produce actual evidence, through sworn affidavits or other competent evidence, and not through bare pleadings alone, of the defendant's contacts with the forum.  <u>Id.</u> (citing <u>Time Share Vacation Club v. Atlantic Resorts, Ltd.</u>, 735 F.2d 61, 66 and n.9 (3d Cir. 1984)).  When the court does not hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, however, "the plaintiff need only establish a *prima facie* case of personal jurisdiction," <u>Miller Yacht Sales, Inc. v.</u>

19

Smith, 384 F.3d 93, 97 (3d Cir. 2004), and the court must accept the plaintiff's evidence as true and resolve all disputed facts and draw all reasonable inferences in its favor. Id.

Here, because Lukoil has contested jurisdiction, it is Plaintiffs' burden to prove Lukoil's contacts through affidavits and other evidence, and they cannot rely on their pleadings or other unsupported statements.  Plaintiffs state that Lukoil supplies and ships gasoline to New Jersey, and Plaintiffs who remain in business must go to Lukoil's "e-Link" to set their pricing and delivery information.  Plaintiffs, however, have not supported this with any evidence.  Consequently, Plaintiffs shall be afforded 20 days to provide such evidence, and the Court will then determine whether Plaintiffs have set forth a *prima facie* case of personal jurisdiction over Lukoil.[5]

## C.   Plaintiffs' Motion for Consolidation

Pursuant to Federal Civil Procedure Rule 42(a), Plaintiffs have moved to consolidate this case with Quick Flow, Inc., et al. v. Getty Petroleum Marketing, Inc., et al., Civil Action No. 06-2954 (NLH).  Plaintiffs assert that the two actions are

_____

[5]It appears that Lukoil is subject to general jurisdiction. Indeed, its defense to Plaintiffs' PMPA claims is that it is marketing gasoline in New Jersey and Pennsylvania under a valid trademark.  It is not for the Court, however, to establish personal jurisdiction once it has been challenged.  If Lukoil waives this defense, it may notify the Court, and Plaintiffs will not be required to provide evidence of Lukoil's contacts.

identical, except for the identity of the plaintiffs, and the interests of justice would be served by consolidation. Defendants do not oppose the consolidation of the two cases for discovery purposes, but they do oppose "full" consolidation of the cases because the individual facts and circumstances of the plaintiffs in the two matters differ significantly.

Whether a case should be consolidated is at the discretion of the trial court and consolidation should be permitted where the consolidation of separate actions presenting common questions of law or fact will promote convenience and economy in judicial administration. Lowery v. Great Lakes Dredge & Dock Co., 2001 WL 818548, *1 (E.D.Pa. June 18, 2001) (citing In re TMI Litigation, 193 F.3d 613, 724 (3d Cir. 1999) ("The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.")). Here, the two cases present the same claims by similarly situated plaintiffs--i.e., the plaintiffs in both cases are all Mobil gas station franchise owners whose stations have been or will be converted into Lukoil stations. As Defendants point out, however, the factual differences between the plaintiffs may eventually serve to have the cases proceed separately at trial.

Following the issuance of this Opinion, the only viable claim remaining in this case, and because it is identical, the

only remaining claim in the <u>Quick Flow</u> case, is Count IV for breach of contract for breach of the implied covenant of good faith and fair dealing.  Because all the plaintiffs are similarly situated, and because there is only one claim remaining, consolidating these cases would avoid duplication of effort, and help prevent conflicting outcomes involving similar legal and factual issues.  Accordingly, the Court will consolidate the actions.  Recognizing, however, that factual differences may require the severance of the cases at trial, Defendants may move for severance pursuant to Rule 42(b) at a future date if they feel that the cases should not be consolidated for trial.

**III. CONCLUSION**

For the reasons expressed above, Defendants' converted motion for summary judgment will be granted as to Counts I, III, V and VI.  Resolution of Defendants' motion to dismiss for lack of personal jurisdiction will be adjourned for 20 days.  Plaintiffs motion for consolidation will be granted.  An appropriate Order will be entered.

Date: December 20, 2007          <u>s/ Noel L. Hillman</u>

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

22